**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | : CHAPTER 13 |
| THELMA JANE HOWE | : |
| DEBTOR(S) | : BANKRUPTCY NO. 09-10183 SR |
| THELMA JANE HOWE, AND DONALD J. HOWE | : |
| PLAINTIFF(S) | : |
| VS. | : |
| CREDITORS INTERCHANGE RECEIVABLES MANAGEMENT, LLC, AND BANK OF AMERICA, N.A. | : |
| DEFENDANT(S) | : ADVS. NO. 09-0010 |

## OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

The Plaintiff filed an Amended Complaint against Bank of America, N.A., (BOA) and Creditor Interchange Receivables Management, Inc. (CIRM)  The Complaint seeks the avoidability of a preferential transfer[1] and damages for violations of federal and state consumer protections laws.  As to the preference claim, BOA has filed a Motion for Summary Judgment.  The Plaintiff opposes that Motion.  For the reasons which follow,

---

[1] 11 U.S.C. § 547(b)

the Motion will be granted.[2]

*Standard for Summary Judgment*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

The court's role in deciding a motion for summary judgment is not to weigh evidence, but rather to determine whether the evidence presented points to a disagreement that must be decided at trial, or whether the undisputed facts are so one sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-252, 106 S.Ct. at 2509-12. In making this determination, the court must consider all of the evidence presented, drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party, and against the movant. *See United States v. Premises Known as 717 South Woodward Street*, 2 F.3d 529, 533

---

[2]Because the Complaint seeks avoidance and recovery of a preferential transfer, it is within this Court's "core" jurisdiction. See 28 U.S.C. § 157(b)(2)(F).

(3rd Cir.1993); *Gould, Inc. v. A & M Battery and Tire Service*, 950 F.Supp. 653, 656 (M.D.Pa.1997).

To successfully oppose entry of summary judgment, the nonmoving party may not simply rest on its pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-50, 106 S.Ct. at 2509-11. Such evidence must be sufficient to support a jury's factual determination in favor of the nonmoving party. *Id.* Evidence that merely raises some metaphysical doubt regarding the validity of a material fact is insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). If the nonmoving party fails to adduce sufficient evidence in connection with an essential element of the case for which it bears the burden of proof at trial, the moving party is entitled to entry of summary judgment in its favor as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.

*Elements of a*
*Preference Claim*

Section 547(b) sets forth the elements of a claim for a preferential transfer:

(b) Except as provided in subsection (c) and (i) of this section, the trustee
may avoid any transfer of an interest of the debtor in property–
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before
such transfer was made;
(3) made while the debtor was insolvent;
(4) made–
(A) on or within 90 days before the date of the filing of the petition; or

> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if–
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The Debtor bears the burden of proving the above elements by a preponderance of the evidence. *See In re Biggs, Inc.*, 159 B.R. 737, 742 (Bankr.W.D.Pa.1993).

*Did the Debtor Have*
*An Interest in the*
*Property Transferred?*

The threshold element of a preference claim is that there occurred a "transfer of an interest of the debtor in property." The term "interest of the debtor in property" is not defined in the Bankruptcy Code. *United States v. Begier*, 496 U.S. 53, 58, 110 S.Ct. 2258, 2263 (1990). The Third Circuit has explain that

> [b]ecause the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate--the property available for distribution to creditors--"property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings. For guidance, then, the Court must turn to § 541, which delineates the scope of "property of the estate" and serves as the postpetition analog to § 547(b)'s "interest of the debtor in property."

*Id.* at 58-59, 110 S.Ct. at 2263. Section 541 provides that the bankruptcy "estate is comprised of ... all legal or equitable interests of the debtor in property as of the

commencement of the case." 11 U.S.C. § 541(a)(1). "While federal law defines what types of property comprise the estate, state law generally determines what interest, if any, a debtor has in property." *In re O'Dowd,* 233 F.3d 197, 202 (3d Cir.2000)

BOA maintains that the Debtor had no interest in the property which she claims is a preference. It explains that the payment which makes up the transfer is from an account held *not in the Debtor's name* but in that of *her husband*. It then cites a series cases holding that for funds received from a third party to be included within a debtor's estate, the debtor must have "dominion or control" over such property. *See* BOA's Brief, 4.

The Debtor's rejoinder is that the original source of those funds was proceeds of their business. Debtor's Brief, 4-5; *see also* Transcript of Hearing, 9/2/09 (T-), 4. Those funds, then, were at one time owned by both husband and wife but would be subsequently placed into separate retirement accounts at the advice of an accountant. So regardless of the separate accounts, she insists, such money remains *marital* property under Pennsylvania domestic relations law. Debtor's Brief, 6; T-10. Thus, she concludes, *her* bankruptcy estate has an interest in such property. *Id.*

*Federal Law
and Debtor's
Interest in IRA*

Determining a debtor's interest in property is largely—but not entirely—a matter of state law. *See Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389 (1992) ("In the absence of any *controlling federal law*, "property" and "interests in property" are creatures of state law." (emphasis added)) And the property in question here is a

creature of federal tax law, an individual retirement account. An IRA is defined as "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries..." 26 U.S.C. § 408(a). Significantly, the account must be held individually, not jointly or by the entireties. The Internal Revenue Code does not define the term "individual." *See Jonson v. C.I.R.*, 353 F.3d 1181, 1184 (10th Cir. 2003). Therefore, the Court must ascribe to the term its plain meaning. *See Total Control, Inc. v. Danaher Corp.*, 2004 WL 1878238 *3 (E.D.Pa.) ("When statutory words or phrases at issue are undefined by the statute, the Court construes the words according to their plain meaning and common usage."); *see also Lawrence v. City of Philadelphia*, 527 F.3d 299, 317 (3d Cir. 2008) ("Plain meaning" means the "ordinary" usage of a term.") An IRA must necessarily exclude joint or other forms of co-ownership. As a matter of federal law, then, the Debtor may not share an ownership interest with her spouse in his IRA.

*State Law and the
Debtor's Interest
in an IRA*

Yet even if the Court were to view the question strictly in terms of state law, which the Debtor would have us do, the result would not change. BOA makes no mention of state law; the Debtor adverts to the Pennsylvania Divorce Code.[3] She explains that "marital property" under state divorce law would extend to her husband's IRA. Debtor's Brief, 5 *citing* 23 P.S. § 3501(a). From that, she concludes that she has an interest in that property which makes it property of her bankruptcy estate. Debtor's

---

[3] 23 P.S. § 3101 *et seq.*

6

Brief, 6.

The Court finds Debtor's argument unpersuasive. Her reliance on state family law is misplaced. This case does not involve a divorce; it is a bankruptcy case. Moreover, it is the *Debtor's bankruptcy case alone*; her husband chose not to file one. So while a debtor's interest in property is determined by non-bankruptcy law, the Pennsylvania law on divorces is not applicable.

The state law that would appear to be applicable is banking law. An IRA, as its title suggests, is an account. It is established with a "trustee" which is defined in the statute as a "bank" or other such qualifying entity. *See* 26 U.S.C. § 408(a), (n).[4] In the context of banks and banking, Pennsylvania law defines an "account" as "any deposit or credit account with a bank, including a demand, time, savings, passbook, share draft or like account, other than an account evidenced by a certificate of deposit." 13 P.S. § 4104(a). The general rule as to ownership of a bank deposit is that funds deposited in a person's name are presumed to belong to the person in whose name it is entered or whose name appears on the account. *Caban v. Comm., Dept. of Public Welfare*, 431 A.2d 1163, 1164 (1981); 9 C.J.S. Banks & Banking § 291 (2009) The presumption is, however, rebuttable. *Baldi v. Baldi*, 325 Pa. 177, 181, 189 A. 490, 492 (1937).

---

[4] Although the husband's IRA was established with a brokerage firm (Merrill Lynch), such entities will be deemed "banks" subject to UCC Article 4 when they offer "banking" services such as check-writing, cash management, deposit acceptance, issuing of periodic statements, etc. *See Nisenzon v. Morgan Stanley DW, Inc.*, 546 F.Supp.2d 213, 224-225 (E.D.Pa.2008). The quarterly statement attached to the Motion indicates that this is such an account. *See* Ex. A. to Motion, ("Your Merrill Lynch Report," 4th Quarter 2008, listing among assets, "Cash/Money Account," p.3 of 7) Thus, the Court finds that the IRA was opened with a bank and that, as a corollary, ownership of it is determined by Pennsylvania law regarding banks and banking. *See* 13 P.S. § 4101 *et seq.*

To prove that the IRA was in the name of the Debtor's husband—and that of no one else—BOA offers documentary evidence: quarterly statements addressed to Debtor's husband, an IRA distribution form executed by him, and a record of a wire transfer from him to the Defendant Creditors' Interchange. His is the only name that appears on these documents. This evidence indicates that no one other than the Debtor's husband owned the IRA.

Against that, the Debtor offers her Affidavit which, it must be said, is basically unhelpful. It explains that whatever money ended up in her husband's IRA came originally from *their* business. *See* Debtor's Affidavit. Assuming that is true—which the Court must at this stage—it is beside the point. It has no bearing on who owned the $20,000 which *he* transferred from *his* IRA. The evidence on this record establishes that the money transferred was her husband's and not her's. The Debtor has offered no evidence which might refute that. This obviates the need to try that issue. As that issue goes to the threshold element of a preference claim, that count is, consequently, futile.

*Summary*

Bank of America's Motion for Summary Judgment on the preference count will be granted.

An appropriate Order follows.

By the Court:

*Stephen Raslavich*

Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>September 17, 2009</u>