# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 13 |
| THELMA JANE HOWE | : |
| DEBTOR(S) | : BANKRUPTCY NO. 09-10183 SR |
| THELMA JANE HOWE, AND DONALD J. HOWE | : |
| PLAINTIFF(S) | : |
| VS. | : |
| CREDITORS INTERCHANGE RECEIVABLES MANAGEMENT, LLC, AND BANK OF AMERICA, N.A. | : |
| DEFENDANT(S) | : ADVS. NO. 09-0010 |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

CIRM has filed a Motion for Summary Judgment as to Counts II and III of the Amended Complaint. Plaintiffs oppose that request. A hearing on the summary judgment request was held on September 9, 2009, after which the Court took the matter under advisement. For the reasons which follow, the motion will be granted.[1]

---

[1] Because the Complaint seeks, inter alia, avoidance and recovery of a preferential transfer, it is within this Court's "core" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(F).

*Background and
Procedural Posture*

On January 11, 2009, the Plaintiff filed a three count Complaint against Bank of America, N.A., (BOA) and Creditor Interchange Receivables Management, Inc. (CIRM) The Complaint seeks the return of a preferential transfer and damages for violations of federal and state consumer protections laws. After CIRM filed an Answer, the Plaintiffs sought leave to amend and were allowed to do so. Discovery was taken and summary judgment motions followed. On July 31, CIRM sought summary judgment on the two counts directed as to it. On August 6, BOA filed a Motion for Summary Judgment as to Count I (the preference claim) which was granted. That left pending CIRM's motion for summary judgment which the Court addresses here.

*Standard for Summary Judgment*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

The court's role in deciding a motion for summary judgment is not to weigh evidence, but rather to determine whether the evidence presented points to a disagreement that must be decided at trial, or whether the undisputed facts are so one sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-252, 106 S.Ct. at 2509-12. In making this determination, the court must consider all of the evidence presented, drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party, and against the movant. *See United States v. Premises Known as 717 South Woodward Street*, 2 F.3d 529, 533 (3rd Cir.1993); *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991); *Gould, Inc. v. A & M Battery and Tire Service*, 950 F.Supp. 653, 656 (M.D.Pa.1997).

To successfully oppose entry of summary judgment, the nonmoving party may not simply rest on its pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-50, 106 S.Ct. at 2509-11. Such evidence must be sufficient to support a jury's factual determination in favor of the nonmoving party. *Id.* Evidence that merely raises some metaphysical doubt regarding the validity of a material fact is insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). If the nonmoving party fails to adduce sufficient evidence in connection with an essential element of the case for which it bears the burden of proof at trial, the moving party is entitled to entry of summary judgment in its favor as a matter

of law. *Celotex Corp. v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.

*The Arguments*

Again, CIRM seeks summary judgment as to the federal and state debt collection claims. Count II alleges that CIRM violated the federal Fair Debt Collection Practices Act[2] (FDCPA). Count III alleges that CIRM violated the Pennsylvania Fair Credit Extension Uniformity Act[3] (PAFCEUA) when it violated the FDCPA. CIRM maintains that both claims must fail as a matter of law because neither applies to the type of debt involved here. It explains that both statutes exclusively regulate the collection of consumer debts. The debt at issue here, it maintains, was a business debt. Therefore, CIRM cannot be liable under either statute. *See* CIRM's Amended Motion, ¶¶ 9-16. Plaintiffs respond that the account which was the target of the collection efforts was, in fact, a consumer debt. In her Affidavit, the Debtor-Plaintiff explains that CIRM was collecting amounts due on a personal credit card account in the Debtor's name. *See* Affidavit of Thelma Jane Howe in Opposition to CIRM's Motion, ¶ 3.

*Analysis*

The FDCPA prohibits a debt collector from employing any false, deceptive, or misleading means in order to collect a "debt." 15 U.S.C. § 1692e (emphasis added). The statute defines a "debt" as

> any obligation or alleged obligation of a consumer[4] to pay
> money arising out of a transaction in which the money,

---

[2] 15 U.S.C. § 1692 *et seq.*

[3] 73 P.S. § 2270.1 *et seq.*

[4] The term "consumer" means any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. § 1692a(3)

4

> property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).[5] The FDCPA is inapplicable to the collection of commercial debts. S. Rep. No. 382, 95th Cong., 1st Sess. at 3 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697. *See Staub v. Harris*, 626 F.2d 275, 278 (3d Cir.1980); *Lyon Financial Services, Inc. v. Woodlake Imaging LLC*, 2005 WL 331695 *6 (E.D.Pa.); *Sheehan v. Mellon Bank*, 1995 WL 549018 *2 (E.D.Pa.) Determining whether an obligation is a consumer or business debt for FDCPA purposes requires an examination of the nature of the transaction from which the debt arose. *See Slenk v. Transworld Sys., Inc.,* 236 F.3d 1072, 1075 (9th Cir.2001) (opining that the borrower's intended use of the loan proceeds is the determinative issue); *see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.,* 214 F.3d 872, 874-75 (7th Cir.2000)(holding that a loan is a consumer debt under the FDCPA, even if the loan proceeds are ultimately used for commercial purposes, if the borrower intended to use the proceeds for personal use at the time of the transaction); *and see also Riviere v. Banner Chevrolet, Inc.,* 184 F.3d 457, 462 (5th Cir.1999) ("In order to determine whether a transaction is primarily consumer or commercial in nature, the court must examine the transaction as a whole."); *and see also Perk v. Worden*, 475 F.Supp.2d 565, 569 (E.D.Va.2007) ("Plaintiff may well have violated the terms of the corporate credit card agreement by incurring personal debt with it, but that fact, even if true, cannot change

---

[5] Although the term "debt" is separately defined in the FCEUA, it need not be analyzed here. That is because the alleged violation of that statute is solely derivative of the alleged violation of the federal FDCPA. Thus an analysis of the term debt under the FDCPA will suffice for both Counts II and III.

5

the character of the debt and take it out of the FDCPA's jurisdiction.") Regardless of the type of account debtor has with BOA, it is the purpose of the debt she incurred (and has failed to pay) on that account that matters. What evidence does CIRM offer in support of its contention that it was collecting a business—as opposed to consumer—debt?

CIRM relies exclusively upon the Debtor's deposition testimony. There, CIRM interrogated the Debtor with regard to the credit card debts listed on her Schedule F. That schedule lists 6 accounts with American Express, two with BOA, two with Discover, one with Barclay's Bank, and another with Capital One. *See* Schedule F. The Debtor testified that each of these accounts was used to make charges related to the Debtor's business. *See* Deposition of Debtor July 27, 2009 (Dep.), Dep. 26-29, 42, attached as Ex. "F" to CIRM's Motion. As to BOA, she explained that the debts incurred on her Bank of America account were incurred to pay "rent, utility bills, inventory, salaries and day-to-day bills" of her business. Dep. 27. She would repeat that "the Bank of America debts, were incurred with respect to keeping [her business] afloat." Dep. 29. She would add that she opened the BOA account for her own personal use, but that that would change after her business foundered. Dep. 45-46. Specifically, she admitted that she transferred an $11,000 balance to the BOA account which represented "money that was incurred with respect to her business." Dep. 47. She also took a cash advance on that account of $500 expressly for her business. Dep. 49. In February 2008, she took a cash advance of $33,000 for the business. Dep. 53. She also testified to putting some of her own money into the business' account from which a payment on the BOA account was made. Dep. 56-57. At the end of the deposition, CIRM would recapitulate the Debtor's testimony:

6

> Q. You said earlier, I believe, that the Bank of America debt that was the subject of these collection efforts by Creditors Interchange were the result of you, of Desert - - were occurred as a result of business of Desert Daisy[6]; is that correct?
>
> A. Yes.
>
> Q. These weren't personal debts?
>
> A. No.
>
> Q. They weren't for your family?
>
> A. No.
>
> Q. They weren't for household purposes?
>
> A. No.

Dep. 90. CIRM's Motion relies, then, on the cumulative weight of the Debtor's admissions in her deposition.

In the face of that evidence, Debtor offers a contradictory Affidavit. There, she responds that the debt was incurred on her personal credit card account with BOA; that the account had been opened long before her business ran into trouble; that while she made two large cash advances on the account, she also made small consumer purchases on it as well; that those cash advances were deposited into a joint checking account in the name of the Debtor and her husband; that the checking account thus commingled the cash advances with other income; that the checking account was used to pay their personal living expenses as well as debts of the failing business; and that at her deposition, the Debtor never meant to give the impression that her line of credit with BOA was a business account. *See* Affidavit, ¶¶ 3, 6, 7, 9, 12-15.

---

[6] The name of the Debtor's business.

7

*Sham Affidavit Rule*

In reviewing the record, the Court observes that it consists solely of the Debtor's testimony. Although the parties' relationship was a financial one, neither side offered any corroborative documentary evidence (i.e., the credit card contract, monthly statements, cancelled checks, dunning notices, etc.)[7] Instead, both parties are content to rely solely on separate statements made by Debtor which, it must be said, are irreconcilable. And while the two statements differ in terms of inherent probative value (deposition versus affidavit), the Court must be careful not weigh what is offered as evidence. That is not to say, however, that the Court must accept the Debtor's Affidavit at face value for purposes of summary judgment. "[I]t is well-settled that when, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists." *Glanzman v. Metropolitan Management Corp.*, 290 F.Supp.2d 571, 579 (E.D.Pa.2003) citing *Massachusetts School of Law at Andover v. American Bar Association,* 107 F.3d 1026, 1039 (3d Cir.1997); *Hackman v. Valley Fair,* 932 F.2d 239, 241 (3d Cir.1991). Indeed, the Supreme Court has recognizing "virtual unanimity" in the Circuit Courts of Appeals that a party cannot survive summary judgment simply by contradicting his or her own previous sworn statement by filing later an affidavit that flatly contradicts that party's earlier sworn deposition. *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 806-807, 119 S.Ct. 1597, 1603-1604, 143 L.Ed.2d 966 (1999)  This is sometimes referred to as the "sham affidavit"

---

[7]And that such evidence exists cannot be denied: CIRM's counsel asked the Debtor to identify her BOA account statements at her deposition.

rule. *See Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 251 (3d Cir. 2007). A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment. *Id.* at 253. The Third Circuit has understood that the rule has been seen by some as impermissibly determining credibility or weighing evidence. *Id.* That such a view is unsupported is reflected by the Supreme Court's explanation that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine *whether there is a genuine issue for trial." Liberty Lobby, supra*, 477 U.S. at 249, 106 S.Ct. at 2511 (emphasis added). Thus, a crucial distinction is observed between weighing competing evidence and determining whether one party has even offered *any* evidence (i.e., a genuine fact, scintilla of evidence) which might necessitate a trial. It is the "genuineness" of the opponent's evidence which determines whether it is a sham.

That leaves the question of methodology. How is the Court to determine if a subsequent contradictory affidavit is offered in good faith or has been manufactured for purposes of delay? On that point, the Third Circuit has observed how (and why) this doctrine has evolved through case law:

> The principal reason for these differences is that the Federal Rules do not address the handling of contradictory affidavits in summary judgment proceedings. Rule 56 governs the limited circumstances under which summary judgment is appropriate. The plain language of Rule 56 permits consideration of affidavits in summary judgement proceedings. Fed. R. Civ. P. 56(e). Indeed, the original version of Rule 56 empowered courts to direct the appearance of affiant for examination, providing the court with an opportunity to question the affiant about contradictory testimony or affidavits. *See* Collin J. Cox,

9

> Note, *Reconsidering the Sham Affidavit Doctrine,* 50 Duke L.J. 261, 266 (2000). However, the current Rule clearly contemplates that district courts will scrutinize affidavits, as it provides that, "[s]hould it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order" a variety of sanctions against the offending party. Fed. R. Civ. P. 56(g). Nevertheless, as the Rule does not prescribe how the court should regard the evidentiary value of contradictory affidavits, the sham affidavit doctrine has grown from a long line of court decisions.

*Jiminez, supra*, 503 F.3d at 252.

As a result, the rule has not been applied uniformly. In *Jiminez*, the Third Circuit observed that three Courts of Appeal have followed a bright line rule regarding the doctrine, precluding a subsequent affidavit which contradicts prior deposition testimony. 503 F.3d at 254 citing *See Buckner v. Sam's Club, Inc.,* 75 F.3d 290, 293 (7th Cir.1996) ("The concern in litigation ... is that a party will first admit no knowledge of a fact but will later come up with a specific recollection that would override the earlier admission."); *Adams v. Greenwood,* 10 F.3d 568, 572 (8th Cir.1993) (holding that "an affidavit denying what is established by one's own evidence ... does not preclude summary judgment"); and *Jones v. General Motors Corp.,* 939 F.2d 380, 385 (6th Cir.1991) (holding that "it is well settled that a plaintiff may not create a factual issue for the purpose of defeating a motion for summary judgment by filing an affidavit contradicting a statement the plaintiff made in a prior deposition").

The approach followed by the Third (as well as the Ninth) Circuit does not consider all contradictory affidavits necessarily to be shams. Instead, the affiant may explain the discrepant testimony:

> When there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit." *Baer v. Chase*, 372 F.3d 609, 624 (3d Cir. 2004). Such corroborating evidence may establish that the affiant was "understandably" mistaken, confused, or not in possession of all the facts during the previous deposition. *Id.* We have also held that an affiant has the opportunity to offer a "satisfactory explanation" for the conflict between the prior deposition and the affidavit. *Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir. 1991) When a party does not explain the contradiction between a subsequent affidavit and a prior deposition, it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as a "sham," therefore not creating an impediment to a grant of summary judgment based on the deposition.

*Jiminez, supra*, 503 F.3d at 254. What is the Debtor's explanation for why her deposition testimony was unclear or inaccurate?

Put plainly, the Debtor places the blame for any inconsistency in her testimony squarely upon the Defendant. She maintains that it was CIRM's counsel's failure to ask the *right* questions—not her answers to what question which were asked— that resulted in Defendant's misimpression. She explains that she was not asked any questions at all regarding the nature of the account. Affidavit, 14. Neither was she asked where she deposited the cash advances after they were received. *Id.* That, she insists—and not any later inconsistency—makes her testimony misleading. It would be her Affidavit, then, that would clarify the record.

And what is the sum and substance of her Affidavit? Debtor explains that the credit card account was used to obtain cash advances which were deposited into her joint checking account at Willow Financial. From that account, she goes on, the Debtor would pay personal living expenses as well as debts of her business. Affidavit, 9. Thus,

11

she concludes, the cash advances from BOA did not go directly to pay business debts.

The Court finds this explanation to be unpersuasive; indeed it is evasive. It dodges the essential question: how the Debtor's earlier testimony that she used the BOA credit card account solely for business purposes is either unclear, incomplete or incorrect. It was Debtor's unequivocal testimony at her deposition that while she had originally opened that account for herself, that would change after her business began to founder. Thereafter, she would use the BOA credit card—as she did with the numerous other cards listed on her Schedule F—to keep that business going. In other words, she would come to use the BOA credit card to charge business debts. Such testimony is certainly not unclear: she repeatedly confirmed that point in her deposition.

Reliance on the contention that the testimony is incomplete or incorrect is likewise unavailing. Assuming, for the sake of argument, that the Debtor misspoke when she testified that the account was used solely to make charges to pay the overhead of her failing business, and that she used the BOA account to obtain cash which she then deposited into a checking account, and then used that cash to pay both personal as well as business expenses, then where is the documentary evidence corroborating that claim? It cannot be credibly said that such evidence does not exist. Financial records such as those are regularly available. Indeed, the Debtor was presented with some of those documents at her deposition. As the Supreme Court explained in *Celotex*, *supra*, after the movant has demonstrated that the non-movant *cannot* prove an element of its case, the non-moving party must come forward with evidence that it *can*; otherwise, there is no need for a trial. In this case, the deposition testimony, taken alone, constitutes clear admissions that the debts incurred on the BOA account were business

12

debts. That shifts the burden to the Debtor to offer evidence that the debts on the account were consumer in nature. This is not onerous; as noted earlier, the parties' relationship was a financial one. There should be ample documentation to support Debtor's contention that cash advances were obtained from BOA and deposited into a checking account from which were paid both personal as well as business expenses. Yet nothing is offered other than Debtor's Affidavit. That simply will not suffice for demonstrating that a triable issue of fact exists. Based on that evidence, the Court finds that the debt at issue is a "business" debt that makes the FDCPA (and, by extension, the FCEUA) inapposite.

*Summary*

For the aforesaid reasons, judgment will be entered in favor of CIRM and against the Plaintiffs as to Counts II and III of the Amended Complaint.[8]

An appropriate Order follows.

By the Court:

Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: November 3, 2009

---

[8] Having concluded that the Plaintiffs cannot prove claims under either the federal or state fair debt collection laws, the Court need not address CIRM's contention that the Debtor's husband lacks standing. Neither need it address the argument that the FDCPA claim fails because it does not involve a debt that was in default when it was assigned for collection.